HENRY Moss et al., Respondents, *v.* JAMES S. HUSTED, Appellant.

Plaintiffs chartered defendant's brig "for a voyage from New York to Nassau, thence to Great Isaacs and back to Hampton Roads for orders to discharge at either Baltimore, Philadelphia or New York." Plaintiffs to furnish a full cargo, " or sufficient to ballast, or ballast during the voyage." Plaintiffs made a subcharter to S. for a voyage from Great Isaacs to Hampton Roads for orders, etc., as in the original charter, S. to furnish a full cargo of guano at Great Isaacs. Plaintiffs furnished outward freight, and gave the captain instructions, as soon as discharged, to report to the agent of S., at Nassau, for instructions. The captain so reported, but there not being a full cargo for the brig at Great Isaacs, said agent offered to furnish a cargo at Nassau direct for New York. The captain refused, unless paid $400 in gold, stating, if this was not paid, he would go to Great Isaacs, and thence home in ballast. The agent thereupon entered into an agreement with the captain agreeing to pay the $400, in addition to the original charter, for non-fulfillment of the charter-party, the brig to load with a full cargo for New York. It was so loaded and returned; the $400 was paid, and was paid over by the captain to defendant. Plaintiffs paid to defendant the whole charter-money stipulated, and received from S. the charter-money stipulated to be paid by the subcharter. In an action to recover the $400, *held*, that as it was not received as damages to plaintiffs for breach of the subcharter, or for a waiver of any of their rights, but, in consideration of a deviation in the voyage stipulated by the original charter, the sum was received by the master, not as agent for plaintiffs, but for the owner, and so it belonged to defendant; that the master was bound to represent the interests of plaintiffs only in respect to the receipt of cargo, etc., within the terms of their charter, and, simply, so to act as to enable him to earn the subcharter-money, which he did; he was not bound to perform a different voyage for plaintiffs' benefit.

(Argued May 26, 1876; decided September 19, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of plaintiffs, entered upon a verdict.

This action was brought to recover the sum of $400, gold, alleged to have been had and received by defendant, belonging to plaintiffs.

The facts appear sufficiently in the opinion.

*Geo. A. Black* for the appellant. To justify a recovery against the captain, plaintiffs would have had to prove that he was their agent, and received the $400 for them. (*Stevens* v. *Com. Mut. Ins. Co.*, 26 N. Y., 397; *Fernandez* v. *Gt. W. Ins. Co.*, 48 id., 581; *Kittell* v. *Wiggins*, 13 Mass., 68.) The master had a right to deem the charter broken when the cargo was refused, and to have sought other employment elsewhere. (*Hecksher* v. *McRea*, 24 Wend., 304; *Haden* v. *Demets*, 53 N. Y., 426.)

*Wm. W. Niles* for the respondents. The right to demand cargo from the guano company belonged only to plaintiffs, and the duty to furnish that was only due from them to plaintiffs, and a verdict was properly ordered for them. (*Butler* v. *Murray*, 30 N. Y., 88; *Hecksher* v. *McCrea*, 24 Wend., 303; *Crabtree* v. *Clark*, Sprague's Dec., 217; *Matthews* v. *Gibbs*, 3 El. & E., 285; *Bunson* v. *Atwood*, 13 Md., 20; *Reynolds* v. *Tappan*, 15 Mass., 370; *Wait* v. *Gibbs*, 4 Pick., 298.)

Rapallo, J. On the 4th of June, 1869, F. W. Mahoney, master and agent of the brig San Juan, chartered her to Moss & Ward, the plaintiffs, for a voyage from New York to Nassau, thence to Great Isaacs and back to Hampton Roads, for orders to discharge at either Baltimore, Philadelphia or New York; all the carrying capacity of the vessel was to be at the disposal of the charterers, who agreed to furnish a full cargo, or sufficient for ballast, or ballast during the voyage, and to pay for the charter $2,200.

On the same day the plaintiffs made a subcharter of the brig to James T. Sanford (who represented the Bahama Guano Company), for a voyage from Great Isaacs to Hampton Roads, for orders to discharge at either Baltimore, Philadelphia or New York; Sandford agreeing to furnish her a full cargo of guano, at Great Isaacs, and to pay freight of five dollars and twenty-five cents per ton.

The plaintiffs furnished outward freight to Nassau and gave the captain written instructions as soon as discharged at Nassau to report to Mr. Farrington (the agent of the subcharterer), who would give him what instructions he might need to proceed to Great Isaacs.

The vessel arrived at Nassau, and after discharging there, was turned over to Mr. Farrington for the purpose of being loaded with guano from the Great Isaacs. But there not being a cargo for her there, Farrington advertised her for freight at Nassau and offered to Captain Mahoney to furnish a cargo for her there direct for New York. The captain refused, saying that he was chartered to take a cargo of guano from the Great Isaacs, and that unless Farrington paid him $400 in gold he would go to the Great Isaacs, lie his lay days and go home in ballast. Farrington represented the subcharterer and had no connection with the plaintiffs. In order to prevent the captain from carrying out his threat and to secure some freight at Nassau, rather than that the vessel should go home in ballast from Great Isaacs, Farrington consented to pay the $400, and entered into an agreement with Captain Mahoney, as follows:

"In consideration of the brig San Juan not being able to get a cargo of guano at Great Isaacs, it is agreed between R. W. Farrington, agent for the Bahama Guano Company, and F. W. Mahoney, master of said brig, that the sum of $400 gold be paid by the said R. W. Farrington, as agent for the Bahama Guano Company, to the said F. W. Mahoney, master of the brig San Juan, in addition to the original charter, as compensation for non-fulfillment of charter party; and it is further

agreed, that the said R. W. Farrington have the use of the vessel to load with a full cargo, at this port, for New York.

"Nassau, N. P., *July*, 1869.

           "R. W. FARRINGTON,
                *Agent Bahama Guano Co.*

           "F. MAHONEY,
                *Master of San Juan.*"

This agreement was indorsed on a certified copy of the original charter-party from Captain Mahoney to the plaintiffs. Captain Mahoney paid over the $400 to the defendant, the owner of the brig.

The brig returned to New York, with a cargo, direct from Nassau. The plaintiffs paid the defendant the whole charter-money stipulated for in the original charter, and received from the subcharterer the whole charter-money stipulated to be paid by the subcharter, with the exception of less than fifty dollars. The reason for this deduction was offered to be shown by the defendant, but was excluded.

The plaintiffs now claim to recover the $400, paid by Farrington to Captain Mahoney. This sum, it appears, was an extra payment, beyond the amount to which the plaintiffs were entitled by their subcharter, or the defendant by the original charter. Whoever obtains it makes a profit to that extent, and the question is, to whom does it belong?

If Captain Mahoney had received it as a compromise for damages to the plaintiffs for the breach of the subcharter, or in consideration of a waiver of any of their rights, of course they would be entitled to it. But that does not appear to have been the consideration for the payment; no such damages were sustained, for the subcharterers appear to have paid what they agreed to, within a trifling amount, and Captain Mahoney does not appear to have undertaken to waive any of their rights. The real consideration of the payment appears to have been his consenting to a deviation from the voyage stipulated by the original charter. This consent he could not have given as agent for the plaintiffs, for they had

no authority to consent to or authorize such a deviation; no one but the owner, or the master acting for him, could give the consent; and consequently, whatever was exacted for that consent belongs to the owner. It related to the management of the vessel, in respect to which the master was agent for the owner. He was bound to represent the interest of the charterers only in respect to the receipt of cargo, etc., within the terms of the original charter, and so to act as to enable them to earn the subcharter money; this he did by tendering the vessel to Farrington and offering to perform the stipulated voyage. When Farrington refused that, the claim of the plaintiffs against the subcharterer was established, and the subcharterer does not appear to have disputed it. But the master was not bound to perform a different voyage for the benefit of the plaintiffs. This was done at the risk and for the benefit of the owner. All that the master was bound to the plaintiffs to do, was to perform the voyage stipulated by the original charter. Any earnings accruing from that voyage he was bound to account for to the plaintiffs. By the subcharter and instructions the vessel, after discharging at Nassau, was subject to the orders of the subcharterer. It is not pretended that any freight was to be taken from Nassau to Great Isaacs. The plaintiffs had no further interest in her except that the master should so manage as to entitle them to the freight-money stipulated by the subcharter. If he did that he performed his whole duty to the plaintiffs. If, in addition, he, at the request of the subcharterer, deviated from the stipulated voyage, and received additional compensation for so doing, such additional compensation was in no manner earned by the plaintiffs, nor under their charter. It cannot make any difference in principle whether the effect of the diversion was to shorten or lengthen the voyage; it was an act which the plaintiffs had no power to authorize, and the master in assenting to it cannot be deemed to have done so as their agent. Nor, does he appear to have done it in their behalf. It was declared in the contract that this sum was to be in addition to the original charter. This could not mean that it was received

under the subcharter, but, clearly, that the owners were to receive it in addition to the amount which the plaintiffs had agreed to pay by the original charter, and the master acted in accordance with this construction by paying the money over to the owner. The sub-charterer also acted on the same theory by paying to the plaintiffs the whole amount of the freights for which they were liable under the subcharter, without claiming any credit for the $400 paid the master. I think it quite plain that this money was not received by the master as agent of the plaintiffs, but as agent for the owners, as a bonus, for consenting in their behalf to a deviation which the plaintiffs were incapable of authorizing, and which in no manner impaired their claim against the subcharterer.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.